IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | |
| ) | |
| EARL BRICE EQUIPMENT, L.L.C. , ) | |
| ) | CASE NO. BK04-84283 |
| Debtor(s). ) | A05-8060 |
| FIRST NATIONAL BANK OF OMAHA, ) | |
| ) | |
| Plaintiff, ) | CH. 7 |
| ) | |
| vs. ) | |
| ) | |
| JAMES KILLIPS, Trustee; DOUGLAS ) | |
| COUNTY, NEBRASKA; CATERPILLAR ) | |
| FINANCIAL SERVICES CORPORATION; ) | |
| and M & S GRADING, INC., ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM

This matter is before the court on cross-motions for summary judgment by Douglas County, Nebraska (Fil. #173) and Caterpillar Financial Services Corporation and First National Bank of Omaha (Fil. #238). Bernard Monbouquette and Kim Hawekotte represent Douglas County, Richard Garden, Jr., represents Caterpillar Financial Services Corporation, and Alan Pedersen represents First National Bank of Omaha. The motions were taken under advisement as submitted without oral arguments. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(K).

The motion by First National Bank of Omaha and Caterpillar Financial is granted. The motion by Douglas County is denied.

First National Bank of Omaha ("FNBO") filed this adversary proceeding to obtain resolution of various competing claims to the proceeds of the sale of assets owned by Earl Brice Equipment, L.L.C. ("Earl Brice"). FNBO and Caterpillar Financial Services Corporation ("Cat Financial") claim first- and second-priority liens on equipment and the proceeds thereof, while Douglas County claims a statutory first-priority lien on the proceeds for the unpaid personal property taxes. There is no dispute between FNBO and Cat Financial as to their respective priorities. The dispute centers on the priority of Douglas County's tax lien vis-à-vis the perfected security interests of the two equipment financing entities. Douglas County seeks summary judgment in its favor, as do FNBO and Cat Financial.

I.  Summary Judgment Standard

Summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Aviation Charter, Inc. v. Aviation Research Group/US, 416 F.3d 864, 868 (8th Cir. 2005); Ferris, Baker Watts, Inc. v. Stephenson (In re MJK Clearing, Inc.), 371 F.3d 397, 401 (8th Cir. 2004).

In ruling on a motion for summary judgment, the court must view the facts in the light most favorable to the party opposing the motion and give that party the benefit of all reasonable inferences to be drawn from the record. Widoe v. District No. 111 Otoe County Sch., 147 F.3d 726, 728 (8th Cir. 1998); Ghane v. West, 148 F.3d 979, 981 (8th Cir. 1998). A summary judgment motion should be interpreted by the court to dispose of factually unsupported claims and defenses. Tiffey v. Speck Enter., Ltd., 418 F. Supp. 2d 1120, 1123 (S.D. Iowa 2006). To withstand a motion for summary judgment, the nonmoving party must submit "sufficient evidence supporting a material factual dispute that would require resolution by a trier of fact." Austin v. Minnesota Mining & Mfg. Co., 193 F.3d 992, 994 (8th Cir. 1999) (quoting Hase v. Missouri Div. of Employment Sec., 972 F.2d 893, 895 (8th Cir. 1992), cert. denied, 508 U.S. 906 (1993)).

II.  Stipulated Factual Findings on Both Motions

FNBO, Cat Financial, and Douglas County agree to the following matters of fact:

1. At all times prior to January 27, 1999, M & S Grading, Inc. ("M & S") was the owner of heavy construction equipment that it utilized in its earth-moving business.
2. On January 27, 1999, M & S executed a purchase agreement to sell equipment that it owned to Earl Brice.
3. The sale of equipment from M & S to Earl Brice closed on January 29, 1999, when M & S issued a bill of sale to Earl Brice.
4. M & S and Earl Brice entered into a lease dated January 27, 1999, where Earl Brice leased the equipment described therein to M & S.
5. Pursuant to the terms of the lease, M & S agreed, among other things, to pay the personal property taxes on the equipment that it leased from Earl Brice.
6. From April 9, 1999, through September 12, 2000, Earl Brice acquired equipment that was financed by Cat Financial under 14 installment sale contracts which were secured by purchase money security interests in the equipment described therein (the "Cat Financial Collateral"). Cat Financial holds a valid perfected purchase money security interest in the equipment described in the 14 installment sale contracts financed by Cat Financial.
7. FNBO holds a valid perfected security interest in all of the assets of Earl Brice and M & S, including the equipment referenced in the purchase

agreement, bill of sale, and lease, with the exception of the Cat Financial Collateral. FNBO holds a second valid perfected security interest in the Cat Financial Collateral subject only to the security interest of Cat Financial.

8. M & S filed a voluntary petition under Chapter 11 of the Bankruptcy Code on May 20, 2002, and operated as debtor in possession until it discontinued operations in December 2004.

9. On January 9, 2003, Douglas County filed a pre-petition proof of claim in the M & S case claiming that M & S was indebted to it for personal property taxes.

10. M & S converted its case to a Chapter 7 case on June 13, 2005.

11. Earl Brice filed a voluntary petition under Chapter 11 of the Bankruptcy Code on December 21, 2004.

12. On January 7, 2005, Douglas County filed a pre-petition proof of claim in the Earl Brice case claiming that Earl Brice was indebted to it for personal property taxes.

13. Earl Brice converted its case to a Chapter 7 case on June 23, 2005.

14. On January 7, 2005, James Killips was appointed trustee for Earl Brice. Mr. Killips was also previously appointed as trustee for M & S on December 20, 2004.

15. On February 25, 2005, the trustee filed a motion to sell all of the assets of Earl Brice.

16. Cat Financial and other creditors objected to the motion.

17. On March 11, 2005, the court entered the sale order that authorized the trustee to sell substantially all of the assets of Earl Brice.

18. The sale order required the immediate payment of $3,906,092 to Cat Financial at the closing of the sale, free and clear of all liens and claims, together with the escrow of $900,000 to a segregated interest-bearing account (the "Caterpillar Escrow Account").

19. The sale order also required the immediate payment of $2,262,307 to FNBO at the closing of the sale, free and clear of liens.

20. The trustee sold all of the remaining Earl Brice equipment at an auction held on May 12, 2005.

21. The sale closed and the trustee placed $900,000 proceeds from the sale of the Cat Financial Collateral in the Cat Escrow Account. Overage from the sale was split in the following manner pursuant to the court order as established in the agreement between FNBO and Douglas County regarding Earl Brice:
    FNBO – 25% ($106,250.00)
    Douglas County Escrow Account – 25% ($106,250.00)
    Earl Brice Equipment, L.L.C. – 50% ($212,500.00)

22. The trustee has remitted $3,906,092 to Cat Financial as proceeds from the sale of the Cat Financial Collateral.

23. The trustee has remitted $2,262,307 to FNBO as proceeds from the sale of the remaining equipment.

24. Personal property taxes on the equipment for the years 2000 - 2005 have not

       been paid.
- 25. On May 19, 2005, Cat Financial requested a certificate of assessment for M & S from the County.
- 26. On May 26, 2005, Cat Financial requested a certificate of assessment for Earl Brice from the County.
- 27. Neither Earl Brice nor M & S have ever appealed the County's claim that personal property taxes are owed on the equipment.

Joint Stip. (Fil. #241).

  In addition, the same principals owned M & S and Earl Brice, and operated them in essence as one business enterprise. The escrow account for the Cat Financial collateral contains $900,000, and the escrow account for the FNBO collateral contains $180,000. Douglas County is owed more than $800,000 for personal property taxes and interest. A balance of more than $5 million remains outstanding on the FNBO loans. A balance of slightly more than $1 million remains outstanding on the Cat Financial debt.

### III. The Cross-Motions for Summary Judgment

  Douglas County's claim to the funds is premised on Neb. Rev. Stat. Ann. § 77-203 (LexisNexis 2006):

> All property taxes levied for any county, city, village, or other political subdivision therein shall be due and payable on December 31 next following the date of levy . . . . Taxes on personal property shall be a first lien upon the personal property of the person to whom assessed until paid.

  A lien for personal property taxes takes precedence over all other encumbrances on the property, including U.C.C. liens. <u>Bird Watchers, L.L.C. v. Johnson County, Nebraska (In re MBA Poultry, L.L.C.)</u>, 295 F.3d 886, 889 (8th Cir. 2002).

  In resistance, Cat Financial and FNBO focus on the portion of the statute creating a lien on the property "of the person to whom [the tax was] assessed" and argue that Douglas County assessed the taxes against M & S as the lessee, rather than against Earl Brice as the owner.

  Under Nebraska law, "assessment" means "the act of listing the description of all real property and taxable tangible personal property, determining its taxability, determining its taxable value, and placing it on the assessment roll." Neb. Rev. Stat. Ann. § 77-126 (LexisNexis 2006). The "assessment roll" is "a complete and verified list of all real property and the taxable tangible personal property in a county and the associated assessments[.]" Neb. Rev. Stat. Ann. § 77-129 (LexisNexis 2006). The county assessor has "general supervision and direction over the assessment of taxable personal property" and shall require that such property "is lawfully assessed throughout the county." 350 Neb. Admin. Code ch. 20, § 002.02A (2007). Every person who owns tangible personal property subject to taxation in Nebraska must list all such property as of the assessment

date of January 1 and file a return on or before May 1. Neb. Rev. Stat. Ann. § 77-1201 (LexisNexis 2006); 350 Neb. Admin. Code ch. 20, §§ 002.01 et seq. (2007). A "person" is "any number of persons and any partnership, limited liability company, association, joint-stock company, corporation, or other entity that may be the owner of property." Neb. Rev. Stat. Ann. § 77-113 (LexisNexis 2006). Leased tangible personal property may be reported to the assessor by the lessor as owner or by the lessee as agent, or by both parties if deemed necessary by the assessor. Neb. Rev. Stat. Ann. § 77-1201(9) (LexisNexis 2006); 350 Neb. Admin. Code ch. 20, §§ 006.01 and 006.01A (2007). However, tax responsibility is not determined by contractual agreements between a lessor and a lessee. 350 Neb. Admin. Code ch. 20, § 006.01A (2007).

The personal property tax returns filed by M & S were under M & S's name and county ID number. On the 2000 return, which was the first return the companies would have filed after entering into their equipment sale and lease arrangement, "Earl Brice Equipment, L.L.C." was handwritten immediately following the pre-printed "M and S Grading, Inc." in the Business Name section of the form. In 2001, the assessor's office printed the return with both M & S and Earl Brice for the Business Name, using M & S's county ID number. Thereafter, due to an automation change that limited the amount of information that could be input in each computer field, the returns were printed with M & S's name in the Business Name field name and county ID number in the County ID field, but the box below contained the names of both M & S and Earl Brice at M & S's mailing address. The explanation for this is that the computer is programmed to populate the Business Name field only with the information contained on the first line of the four-line name and address information in the second box of the return. Jakub Dep. 96:6-98:5, May 30, 2007 (Fil. #184). Because M & S was listed on the first of the four lines and Earl Brice was listed on the second, M & S was the only name pulled into the Business Name field. Id.

In 2002, the assessor's office became aware of the existence of Earl Brice as a separate entity, established a separate account for it, and sent a personal property tax return for Earl Brice to complete. After reviewing the return, which reported a taxable value of zero, the assessor's office then performed a tax audit on the company. In response, M & S's chief financial officer notified the county that "[a]ll personal property information has been filed under Earl Brice Equipment, L.L.C. Both companies have the same owners." Letter from Calvin McGruder to Michelle Hatcher (Sept. 30, 2003) (Fil. #195). Because the auditor determined after reviewing federal tax forms and depreciation schedules for both entities that all of Earl Brice's equipment had been reported on M & S's tax returns, she assessed Earl Brice at zero and raised the taxable valuation for M & S. Id. The assessor's office did not send future personal property returns to Earl Brice "[b]ecause they'll just be filing a zero return every year. We were just trying to eliminate paperwork." Hatcher Dep. 45:25-46:2 (Fil. #185).

Despite reams of deposition testimony, it has been difficult to determine whether Earl Brice was "assessed" for personal property taxes, likely because the assessor's office cannot give a definitive answer to the question. The members of the assessor's staff who were deposed for this case testified repeatedly and uniformly that the personal property tax is "self-assessed," meaning the assessor relies on the return as completed by the taxpayer, and only if something on the return catches the staff's attention will they contact the taxpayer. See, e.g., Jakub Dep. 94:17-18, May 30,

2007 (Fil. #184) ("It's a self-assessed tax. We take the taxpayer at their word."); Hatcher Dep. 66:6-7 (Fil. #185). A former supervisor in the assessor's office explained that determining the legal status of a taxpaying entity is beyond the scope of the staff's duties. Jakub Dep. 94:19-21, May 30, 2007 (Fil. #184).

A tax auditor for Douglas County explained in deposition testimony that the assessor's office is less concerned with who pays the personal property tax than the fact that it is paid. As attorneys for the various parties attempted to obtain a clarification of what "assessed" means to the assessor's staff – because the case hinges on that definition – the tax auditor maintained that the taxable property is ultimately responsible for payment of the tax. Hatcher Dep. 65:20-21 ("it goes against the equipment, not the actual people"); 85:17-21 ("Q: [I]n your view it's the equipment that's liable for the tax? A: Yes. Q: And ownership does not matter? A: Yes.") (Fil. #185).

The assessor's staff's insistence that the personal property tax is "self-assessed" is probably a function of the manner in which the office carries out its duties, but the legal responsibility for "assessing" property is squarely on the assessor. "The assessor shall assess all real and tangible personal property in the county pursuant to the applicable laws of the state and rules and regulations of the Property Tax Administrator or Department of Property Assessment and Taxation." 350 Neb. Admin. Code ch. 70, § 004.03 (2007).

Even though Douglas County viewed the M & S and Earl Brice accounts as a joint account, Jakub Dep.65:9, May 30, 2007 (Fil. #184); Hatcher Dep. 75:7-9 (Fil. #185), and would like to collect from both entities[1], it seems clear in light of the assessor's duty to assess all tangible personal property that Douglas County did in fact "assess" Earl Brice for personal property taxes. The county assessed those taxes at zero.

Despite being provided with documentary evidence in 2000 that Earl Brice owned the equipment that M & S was leasing, and in 2003 that Earl Brice owned $2.4 million worth of assets and M & S owned only $68,000, the county continued to permit everything to be transacted under the M & S name and account number. Accordingly, the county's tax roll reflected a zero valuation and zero tax for Earl Brice (Fil. #220).

The evidence indicates that the county did not expect to receive separate tax payments from Earl Brice. Anyone looking at the tax rolls for the Earl Brice name and account number would think Earl Brice has no assets and does not owe any personal property tax. This all may be a result of the Douglas County Assessor's internal record-keeping, but by acquiescing in two separate legal entities' joint reporting of assets and tax liability, the county assessor abrogated his duty and failed to properly assess Earl Brice's property and cannot now claim a statutory tax lien on the proceeds.

---

[1]The authority for doing so is unclear.

IV.  Conclusion

Douglas County does not hold a lien for unpaid personal property taxes against the proceeds of the sale of assets of Earl Brice because Douglas County did not assess Earl Brice for those taxes.

IT IS ORDERED: The motion for summary judgment by Douglas County, Nebraska (Fil. #173) is denied. The joint motion for summary judgment filed by Caterpillar Financial Services Corporation and First National Bank of Omaha (Fil. #238) is granted. Separate judgment will be entered.

DATED:	October 9, 2007

BY THE COURT:

 /s/ Timothy J. Mahoney
Chief Judge

Notice given by the Court to:
	*Douglas County Attorney
	*Richard Garden, Jr.
	*Alan Pedersen
	U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.